# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

CLARA COLEMAN,

        Plaintiff,

v.

        CIVIL NO. 06-10366
        HON. LAWRENCE P. ZATKOFF

MAXWELL SHOE COMPANY, INC.,
and J.C. PENNEY CORP.,

        Defendants.

_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on February 20, 2007

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter is before the Court on Plaintiff's motion for summary judgment [dkt 27] and Defendant J.C. Penney's motion for summary judgment [dkt 20]. Both parties have filed responses and replies. The Court finds that the facts and legal arguments are adequately presented in the parties' papers and the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. MICH. LR 7.1(e)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted. For the reasons set forth below, Plaintiff's motion is DENIED and J.C. Penney's motion is GRANTED.

## II.  BACKGROUND

On June 15, 2004, Plaintiff went shopping at Defendant J.C. Penney's store in Westland, Michigan.  Plaintiff saw the "Mootsie Tootsie" shoe on display, and asked the sales clerk to bring her a size 8-1/2.  The "Mootsie Tootsie" shoe is manufactured by Defendant Maxwell.  Plaintiff purchased the shoes and brought them home.  Two days later, the strap on the left shoe broke as Plaintiff was walking down a staircase in her home.  Plaintiff fell down the stairs, sprained her left ankle, and tore the rotator cuff in her left shoulder.

Plaintiff returned the shoes to J.C. Penney.  An employee refunded the purchase price, and took a picture of the unbroken right shoe.  There do not appear to be any pictures of the left shoe.  J.C. Penney retained the shoes, and placed them in the loss prevention office.  However, at some point the shoes were either moved or disposed of, and J.C. Penney does not know where they currently are.

Plaintiff brought claims of negligence and breach of implied warranty against J.C. Penney and Maxwell.  Plaintiff brought a claim of "negligence and fraud by spoliation of evidence" against J.C. Penney.  Plaintiff has moved for summary judgment against J.C. Penney on the implied warranty and spoliation of evidence issues.  J.C. Penney has also moved for summary judgment.

## III.  LEGAL STANDARD

Summary judgment is appropriate only if the answers to the interrogatories, depositions, admissions, and pleadings combined with the affidavits in support show that no genuine issue as to any material fact remains and the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c).  A genuine issue of material fact exists when there is "sufficient evidence favoring

the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citations omitted). In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324. The non-moving party must do more than show that there is some metaphysical doubt as to the material facts. It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment. *See Moore v. Phillip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

### IV.  ANALYSIS

####    A.    Spoliation of Evidence

Plaintiff claims that because the shoes at issue were lost while in J.C. Penney's possession, she is entitled to a presumption that the shoes would have constituted evidence adverse to J.C. Penney. Plaintiff also claims that J.C. Penney's retention of the shoes constituted a bailment, and its subsequent loss of the shoes was presumptive negligence.

In response, J.C. Penney notes that there is no evidence showing it intentionally misplaced the shoes, and a presumption regarding adverse evidence is therefore inappropriate. J.C. Penney is correct: "the presumption that nonproduced evidence would have been adverse applies only where there is evidence of intentional fraudulent conduct and intentional destruction of evidence." *Lagalo v. Allied Corp.*, 233 Mich. App. 514, 520 (1999). There has been no evidence showing that J.C. Penney intentionally disposed of the shoes. Thus, Plaintiff is not entitled to a presumption that the shoes would have constituted adverse evidence against J.C. Penney.

J.C. Penney also argues that its retention of the shoes did not constitute a bailment. A bailment is "the delivery of personal property by one person to another in trust for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed and the property returned or duly accounted for when the special purpose is accomplished." *Goldman v. Phantom Freight, Inc.*, 162 Mich. App. 472, 479-80 (1987). Plaintiff returned the shoes to J.C. Penney, and received a full refund. When she returned the shoes, Plaintiff did not ask J.C. Penney to do with anything with them. Plaintiff's Dep. at 79. Plaintiff has not alleged that there was an express or implied contract between her and J.C. Penney regarding the retention of the shoes, and thus has failed to state a claim regarding this issue.

### B.     Implied Warranty

The traditional rule in Michigan was that a plaintiff did not have to show negligence on the part of the seller to recover under an implied warranty theory. The plaintiff needed to show that the product was sold in a defective condition and the defect caused the plaintiff's injury. *Piercefield v. Remington Arms Co.*, 375 Mich. 85 (1965). The Michigan Tort Reform Act, which became effective in 1996, contained a section dealing with the liability of sellers for items they sold, but did

4

not manufacture:

> In a product liability action, a seller other than a manufacturer is not liable for harm allegedly caused by the product unless either of the following is true:
>
>   (a) The seller failed to exercise reasonable care, including breach of any implied warranty, with respect to the product and that failure was a proximate cause of the person's injuries.
>
>   (b) The seller made an express warranty as to the product, the product failed to conform to the warranty, and the failure to conform to the warranty was a proximate cause of the person's harm.

M.C.L. § 600.2947(6).

Plaintiff and J.C. Penney offer differing interpretations of this section. J.C. Penney claims that the Tort Reform Act added an element of fault to the traditional test for breach of implied warranty. In other words, the plaintiff must show that the product was sold in a defective condition, the defect caused her injury, *and* the seller failed to exercise reasonable care.

In contrast, Plaintiff argues that the Tort Reform Act did not change the traditional test for breach of implied warranty. Thus, pursuant to § 600.2947(6), the plaintiff can either show that the seller failed to exercise reasonable care, *or* that the product was sold in a defective condition, and the defect caused her injury.

The resolution of both Plaintiff's and J.C. Penney's motions for summary judgment hinges on the interpretation of § 600.2947(6). J.C. Penney notes that according to Plaintiff's own testimony, the shoe appeared to be in perfect condition when she purchased it. Plaintiff has failed to produce any evidence showing that J.C. Penney was negligent in failing to detect the defect in the shoe. Thus, if J.C. Penney is correct, and § 600.2947(6) requires a showing of fault on the part of the seller, it is entitled to summary judgment.

Likewise, J.C. Penney has not challenged Plaintiff's claim that a strap on the shoe broke,

5

causing her to fall down the stairs. Plaintiff has shown that the shoe was defective, and the defect caused her injury. Thus, if Plaintiff's interpretation of § 600.2947(6) is correct, she is entitled to summary judgment on the issue of liability for breach of implied warranty.

The Michigan Supreme Court has not ruled on the issue, and the Michigan Court of Appeals, in two unpublished opinions, has issued contradictory statements on the statute. In 2001, the Court of Appeals stated that:

> [A] plaintiff seeking to recover from a retailer must establish: (1) that the seller failed to exercise reasonable care relative to the product at issue and (2) that the seller's conduct proximately caused the plaintiff's injuries. Additionally, the statute provides that if a plaintiff can establish a breach of any implied warranty, that will suffice for purposes of showing that the seller failed to "exercise reasonable care" as regards the product.

*Adams v. Meijer, Inc.*, No. 224213, 2001 Mich. App. LEXIS 298, *8 (2001). This statement clearly supports Plaintiff's interpretation of the statute. In 2005, however, a different panel of the Court of Appeals held that:

> The plain language MCL 600.2947 states that, in cases where a plaintiff brings a product liability action based on harm allegedly caused by a product, the only claims that may lie against a non-manufacturing seller are those based on a failure to exercise reasonable care and those based on breach of an express warranty. If the language of a statute is clear and unambiguous, no interpretation is necessary and the court must follow the clear wording of the statute. The clear and unambiguous language of MCL 600.2947 precludes an ordinary manufacturing defect claim against a non-manufacturing seller because such a claim does not involve an allegation that the seller failed to exercise reasonable care or made an express warranty.

*Hastings Mut. Ins. v. GMC*, No. 252427, 2005 Mich. App. LEXIS 849, *7-*8 (2005) (citation omitted). This holding clearly supports J.C. Penney's interpretation.

Federal district court decisions from the Eastern District of Michigan have also supported both interpretations. In *Siedlik v. Pancras*, 205 F. Supp. 2d 762 (E.D. Mich. 2002), the court

6

rejected the defendant's argument that § 600.2947(6) added an element of fault to a breach of implied warranty claim. Likewise, in *Konstantinov v. Findlay Ford Lincoln Mercury*, 04-74928, 2006 U.S. Dist. LEXIS 85836, (E.D. Mich. 2006), the court held that § 600.2947(6) retained the distinction between fault-based claims and implied warranty claims. However, the court also noted that the language of the statute could be read to give a different result: "While the construction of the statute indicates that implied warranty claims are a subset of claims involving a failure to exercise reasonable care, courts have interpreted these as distinct causes of action." *Id.* at *9.

In contrast, in *Mills v. Curioni, Inc.*, 238 F. Supp. 2d 876 (E.D. Mich. 2002), the court held that a non-manufacturing seller cannot be held liable for a product defect unless there is a showing of fault on the part of the seller. The court did note in dicta that breach of implied warranty remains a separate claim under § 600.2947(6). However although the plaintiff in *Mills* did not label his claim as breach of implied warranty, the substance of the claim was the same as Plaintiff's claim in the instant case. The plaintiff in *Mills* claimed he was injured by a defective product, which he purchased from a non-manufacturing seller. However, after a thorough analysis of § 600.2947(6), the court held that it was not enough for the plaintiff to claim that the product was sold in a defective state, and the defect caused his injury. In order to recover against the non-manufacturing seller, the plaintiff was required to show independent negligence on the part of the seller. *Id.* at 886. The court held that § 600.2947(6) "should be read to require a plaintiff to prove that the seller knew or had reason to know of a products defect." *Id.*

The Court finds that *Mills* provides the best interpretation of the statutory language. The *Siedlik* court based its decision in large part on a Sixth Circuit case, *Hollister v. Dayton Hudson Corp.*, 201 F.3d 731, 737 (6th Cir. 2000), and a Michigan Supreme Court case, *Piercefield v.*

7

*Remington Arms Co.*, 375 Mich. 85 (1965). However, although *Hollister* was decided in 2000, the case was filed in 1996, before the Tort Reform Act took effect. Thus, § 600.2947(6) was not relevant to the case, and the Sixth Circuit did not discuss the statute. Likewise, *Piercefield* was decided before the Tort Reform Act was passed. While these cases explain the traditional rule for breach of implied warranty claims, they do not shed light on how the Tort Reform Act altered those claims.

The plain language of § 600.2947(6) indicates that the legislature did not intend for failure to exercise reasonable care and breach of implied warranty to be separate products liability claims. § 600.2947(6)(a) states that a non-manufacturing seller is not liable unless "[t]he seller failed to exercise reasonable care, *including* breach of any implied warranty, with respect to the product and that failure was a proximate cause of the person's injuries." (emphasis added). Had the legislature intended this section to allow for two separate claims, it would have used the conjunction "or": "the seller failed to exercise reasonable care, *or* breached any implied warranty." The legislature's use of "including" plainly indicates that breach of implied warranty claims are to be considered a type of reasonable care claim, not a separate claim.

This conclusion is further supported by the last clause of § 600.2947(6)(a): "and *that failure* [to exercise reasonable care] was a proximate cause of the person's injuries." (emphasis added). The legislature did not use the language "and that failure *or breach of implied warranty* was a proximate cause of the person's injuries." Clearly, the only claim envisioned by the legislature in § 600.2947(6)(a) was failure to exercise reasonable care.

Plaintiff could argue that although § 600.2947(6)(a) does not allow for a separate claim of breach of implied warranty, the legislature intended for breach of implied warranty to be an

8

alternative way to show the seller failed to exercise reasonable care, without any additional showing of fault. However, this argument is unpersuasive.

Traditionally, failure to exercise reasonable care was considered a "tort" claim, and breach of implied or express warranty was considered a "contract" claim. *Hollister v. Dayton Hudson Corp.*, 201 F.3d 731, 736 (6th Cir. 2000). § 600.2947(6)(b) allows for a plaintiff to recover under the contract theory of breach of express warranty, without a showing of fault. However, the legislature did not place the reference to breach of implied warranty in § 600.2947(6)(b), the "contract" clause of the section. Instead, the legislature placed the reference to breach of implied warranty in § 600.2947(6)(a), the "tort" clause of the section. This placement indicates that the legislature intended to add an element of fault to the traditional implied warranty claim. This conclusion is bolstered by the clause's emphasis on reasonable care. § 600.2947(6)(a) states that a plaintiff cannot recover unless the non-manufacturing seller's failure to use reasonable care "was a proximate cause of the person's injuries."

Under Plaintiff's interpretation, the seller's failure to use reasonable care can be established with a traditional breach of implied warranty claim. However, the traditional implied warranty claim did not involve a reasonable care standard. Thus, under this interpretation, a plaintiff can establish the seller's failure to use reasonable care with a claim *that does not involve reasonable care at all*. This is a strained and counterintuitive reading of the clause, and does not mesh with the clause's avowed intent to require the plaintiff to show that the seller *failed to use reasonable care*. Furthermore, this interpretation *de facto* allows for two types of claims: failure to use reasonable care, and breach of implied warranty. However, as discussed above, the clause only provides for one type of claim: failure to use reasonable care. In addition, the implied warranty "exception"

9

would swallow the reasonable care rule. Any time a plaintiff was injured by a product defect, she could bring an implied warranty claim against the seller, and bypass the reasonable care standard altogether. Plaintiff's interpretation introduces an unnecessary tension into the clause, and comes close to rendering the clause meaningless. A basic canon of statutory interpretation is that the court's interpretation should not render a portion of the statute meaningless. *United States v. Cole*, 418 F.3d 592, 597-98 (6th Cir. 2005).

Furthermore, under Plaintiff's interpretation, § 600.2947(6)(a) merely retained the tradition rules for failure to use reasonable care and breach of implied warranty claims. However, the purpose of the Tort Reform Act was not to codify existing law, but to modify it. The Michigan Court of Appeals described the Tort Reform Act as "a series of bills that overhauled the tort system in Michigan." *Wysocki v. Kivi*, 248 Mich. App. 346, 359 (2001). One aspect of the tort system that the legislature specifically intended to modify was the liability of non-manufacturing sellers. The Senate Fiscal Agency stated that a rationale for the statute was "[m]any also believe that a wholesaler or retailer should not be held liable unless the seller's negligence caused the injury." Senate Fiscal Agency Analysis of S.B. 344 at 1. The Senate Fiscal Agency further stated that the statute:

> [E]stablishes a fault-based standard of liability for nonmanufacturing product sellers, providing that a seller is not liable unless it failed to exercise reasonable care or a product failed to conform to an express warranty, and the failure was a proximate cause of the harm. By holding sellers responsible only for their own wrongdoing, the bill will eliminate unnecessary and burdensome legal costs and insurance premiums. Since manufacturers ultimately indemnify sellers for the harm caused by the manufacturers' own products, claims should be brought directly against them. In addition, placing liability on the party that is in the best position to prevent harm will encourage product safety.

*Id.* at 11. Thus, according to the Senate Fiscal Agency, the statute established a fault-based standard

of liability for non-manufacturing product sellers.  A plaintiff can only recover against a non-manufacturing seller if the seller fails to exercise reasonable care, or breaches an *express* warranty.  This statement of legislative intent clearly supports J.C. Penney's interpretation of the statute.

J.C. Penney's interpretation also best comports with other sections of the statute.  Prior to the passage of the Tort Reform Act, a defendant in a products liability action could be required to pay damages "greater than his or her percentage of fault."   Senate Fiscal Agency Analysis of S.B. 344 at 6.  However, M.C.L. § 600.6304(4) now provides that "a person shall not be required to pay damages in an amount greater than his or her percentage of fault."  A commentary in the Michigan Bar Journal noted that:

> The Court's refusal to recognize the apparent manufacturer doctrine is consistent with the new tort reform bill, S.B. 344, which has been hailed as a major overhaul of Michigan product liability law. For example, with the elimination of joint and several liability, the factfinder will be required to allocate a percentage of fault among all parties, as well as non-parties, and to consider the nature of the conduct and the extent of the causal relation between the conduct and the damages claimed. . . . *The factfinder's task under the new law should result in a zero assessment of fault to the nonmanufacturing seller, whose involvement in the product may have been no more than to place the product on its shelf.*

Rosemary G. Schikora, *No "Apparent Manufacturer" Liability in Michigan*, 75 Mich. Bar. J. 246 (1996) (emphasis added).

The Court finds that both the language of § 600.2947(6) and the legislative intent behind the statute show that non-manufacturing sellers cannot be held liable for damages due to breach of implied warranty, unless they failed to exercise reasonable care.  As discussed above, Plaintiff stated that the allegedly defective shoe appeared to be in perfect condition when she purchased it.  Plaintiff has failed to produce any evidence showing that J.C. Penney was negligent in failing to detect the defect in the shoe.  Thus, Plaintiff's claim against J.C. Penney fails as a matter of law.

## V.  CONCLUSION

For the above reasons, Plaintiff's motion for summary judgment is DENIED.  J.C. Penney's motion for summary judgment is GRANTED.

IT IS SO ORDERED.


                                                s/Lawrence P. Zatkoff
                                                LAWRENCE P. ZATKOFF
                                                UNITED STATES DISTRICT JUDGE

Dated:  February 20, 2007

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on February 20, 2007.

                                                s/Marie E. Verlinde
                                                Case Manager
                                                (810) 984-3290